# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIM. NO.: 1:10-cr-00011 |
| v. ) | |
| ) | |
| JIMMY DAVIS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER ON THE PARTIES' MOTIONS IN LIMINE**

Finch, Senior Judge

THIS MATTER comes before the Court on three motions in limine: 1) Defendant Jimmy Davis's Motion in Limine to exclude evidence concerning events that transpired on January 31, 2010 and search and arrest warrants executed on February 13, 2010; 2) the Government's Motion in Limine to prohibit Defendant from offering evidence of the lack of DNA evidence; and 3) Defendant's Motion in Limine to preclude the testimony of the Government's fingerprint expert. The Court finds that a hearing on these motions in unnecessary and addresses each of these motions in this Memorandum Opinion and Order.

**I. Defendant's Motion in Limine to Exclude Evidence of Events Occurring on January 31, 2010 and Search and Arrest Warrants Executed on February 13, 2010**

  **a. Evidence Concerning the Events Transpiring on January 31, 2010**

On January 31, 2010, police were informed that an individual with a gun was seen in the Aurea Diaz Housing Community driving a blue Suzuki Aerio. Police responded and observed a vehicle matching this description a short distance from the housing community. A high speed

chase ensued; the suspect eventually drove through a fence on someone's property and drew a gun on the pursuing officer. The suspect escaped, but abandoned the vehicle. Inside the vehicle, police found a cell phone that allegedly contained Defendant's picture. A police officer indentified the person in the picture on the phone as the person he was pursuing. Based on these circumstances, the Superior Court issued a search warrant for No. 816 William's Delight and an arrest warrant for Defendant.

On February 13, 2010, members of the Virgin Islands Police Department ("VIPD") executed the search warrant at 816 William's Delight. During the execution of this search warrant, a member of the VIPD witnessed what appeared to be a hand grenade being tossed from the living room window of the house. The search of the residence also revealed a handgun. Defendant Jimmy Davis and his mother were the only occupants of the home at the time of the search. Defendant was arrested and placed in the custody of the VIPD.

Defendant contends that evidence regarding the events of January 31, 2010 is irrelevant and prejudicial and thus inadmissible under Federal Rules of Evidence 401 and 403. The Government submits that "unless the defendant opens the door it has no intention of offering evidence of the January 31, 2010 incident." (Govt.'s Opp. at 1, Doc. 24.)[1] The Court will treat this as a binding agreement by the Government not to introduce evidence regarding the events transpiring on January 31, 2010, unless Defendant "opens the door" and will therefore reserve ruling on Defendant's motion to exclude this evidence. *See United States v. Liburd*, 2010 WL 2293287, at *3 (3rd Cir. June 9, 2010) (representations made by Government that it will not

---

[1] Unless otherwise specified, the Court refers to documents on Docket No. 1:10-cr-00011.

introduce certain evidence are binding). During trial, if the Government contends that Defendant has "opened the door," the Government, out of the presence of the jury, may move to introduce this evidence and the Court will revisit Defendant's motion.

### b. The Search and Arrest Warrants

Defendant contends the search and arrest warrants are irrelevant, prejudicial and inadmissible hearsay. The Government contends that relevance of the arrest and search warrants is not substantially outweighed by their prejudicial effect because they go to its case-in-chief on Count 4, a violation of 14 V.I.C. § 1508 – interfering with an officer discharging his duty. Court 4 charges that Defendant

> did willfully endeavor to delay or obstruct officer Gregory Bennerson from discharging, or attempting to discharge his duties relating to a violation of a criminal statute of the Virgin Islands, by throwing a grenade in the vicinity of officer Gregory Bennerson, as the officer attempted to execute a search warrant to search #816 Williams Delight Frederiksted.

(Indictment at 4, Doc. 1.)

As part of its section 1508 charge, the Government must prove that the "public officer" was "in the discharge, or attempt to discharge any duty of his office." 14 V.I.C. § 1508. The Government argues that the warrants are evidence that the officer, whom Defendant allegedly threw a grenade near, was at Defendant's residence in the discharge of his official duties, i.e. execution of the search and arrest warrants. The Court agrees and finds that the warrants are relevant.

Defendant argues that the warrants are prejudicial because they "recite the charges that are the subject of the criminal complaint in the Superior Court and are based upon the incident at Aureo Diaz Housing Community that occurred on January 31, 2010." (Def.'s Mot. at 3, Doc. 17.) The Court finds that a recitation of the charges should be redacted from the warrants because the prejudice caused by informing the jury of the reason for the search substantially outweighs any probative value, particularly because the recitation of the charges is unnecessary to accomplish the Government's stated reason for admitting them into evidence. To prove their section 1508 claim, the Government need only prove that the police were in the process of executing a warrant, not why the warrant was issued.

Defendant also argues that the warrants are hearsay. Hearsay is "a statement . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Here, the Government seeks to offer the warrants to prove that Officer Bennerson was discharging his official duties – execution of search and arrest warrants. The Government is not offering the warrants for the truth of any matter contained therein but rather to explain why Officer Bennerson was at 816 Williams Delight. *See United States v. Brown*, 923 F.2d 109, 111 (8th Cir.), cert. denied, 502 U.S. 833 (1991). ("An out-of-court statement is not hearsay, however, if it is offered for the limited purpose of explaining why a police investigation was undertaken."). However, to the extent that these warrants contain a recitation of the events occurring on January 31, 2010, that information must be redacted as it would be hearsay. Fed. R. Evid. 801(c).

## II. Government's Motion in Limine to Prohibit Defendant From Offering Evidence of the Lack of DNA Evidence

While the Government motion is styled as one to "[p]rohibit the defendant from offering evidence of . . . the lack of DNA evidence," (*see* Govt.'s Motion in Limine at 1, Doc. 38), the Government is actually requesting permission to offer evidence that Defendant refused to submit to DNA testing "if he opens the door by referencing the lack of any DNA in this case." (*Id*. at 2.) To support this motion, the Government offered the following facts as an offer of proof:

On March 5, 2010, the Superior Court issued an order for Davis to submit to the taking of DNA samples. (*See* Order in Case No. SX-10-CR-92, Doc. 38-1.) The Superior Court Clerk entered notice of that order on March 8, 2010. (*Id*.) On March 9, 2010, when Detective Shuster of the VIPD attempted to collect samples from Defendant, Defendant stated "that his lawyer told him not to submit to any DNA testing." (Govt.'s Mot. at 1.) Another unsuccessful attempt was made by VIPD on March 17, 2010. (*Id*.)

Defendant argues that he was justified in refusing to give the samples on March 9 and 17 because the Attorney General had filed a motion to dismiss the Superior Court case. (*See* Motion to Dismiss Without Prejudice, Doc. 39-1) (moving to dismiss without prejudice on March 9, 2010 because "[t]his matter has been transferred to the USA office, and charges have been filed with the District Court, against Jimmy Davis, Criminal Number 2020/0011." [*sic*]) [2]

---

[2] Defendant alleges that police asked him to "voluntarily submit samples." (Def.'s Opp. at 3.) Defendant's claim that he refused a voluntary test is based on his argument that the Superior Court's order compelling DNA samples was invalid because the Attorney General has already moved to dismiss his case. Based on the date of the Attorney General's motion (March 9, 2010) and the dates that the VIPD attempted to collect Defendant's DNA (March 9 and 17), the Court assumes that the Superior Court's order had expired due to lack of jurisdiction. Therefore, the VIPD's requests for Defendant's DNA can be said to be "voluntary." However, the Court notes

Defendant argues that while "he should be allowed to point out to the jury the absence of any evidence, even DNA evidence, indicating his guilt . . . [t]he Government should not be allowed to point out to the jury that the Defendant refused to voluntarily submit samples for DNA testing when offered." (Def.'s Opp. at 2-3, Doc. 39.) Defendant argues that to allow the Government to enter evidence of his refusal to submit to DNA testing would "raise the implication to the jury [] that defendant refused the Government's offer to submit to the one test that would have cleared him unequivocally, therefore he must be guilty." (*Id*. at 3.)

The Government is ordinarily prohibited from commenting on or admitting evidence regarding the defendant's invocation of his Fourth and Fifth Amendment rights. *See Griffin v. California*, 380 U.S. 609, 615 (1968) (holding that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."); *United States v. Thame*, 846 F.2d 200, 206-207 (3d Cir. 1988) cert. denied, 488 U.S. 928 (1988) (citing *Griffin* and finding "no valid distinction between the privilege against self-incrimination and the privilege against unreasonable searches and seizures" as they pertain to use at trial of a defendant's invocation of his Fourth Amendment rights.)

However, "where . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel . . . there is no violation of the privilege." *United States v. Robinson*, 485 U.S. 25, 32 (1988); *see United States v. Isaac*, 134 F.3d 199, 206 (3d Cir. 1998) ("[W]hen the defendant uses his *Griffin* protection as a sword, rather than a shield, the prosecution may respond appropriately."); *Baptiste v. Government of*

---

that Defendant acknowledges that the Attorney General "did, presumably upon presentation of sufficient justifiable reasons and a proper plan, obtain an order in the Superior Court of the Virgin Islands for collection of DNA samples from this Defendant." (*Id*. at 2.)

*Virgin Islands*, 240 F.Supp.2d 381, 387 (D.V.I. App. Div. 2003) (holding that there "is no Fifth Amendment violation" when prosecutor comments on defendant's silence "in direct response to a claim made by the defendant or defendant's counsel"); *cf Thame*, 846 F.2d at 206-207 (noting that Government's comment on defendant's reliance on Fourth Amendment rights in refusing search "cannot be justified as an invited reply since the prosecutor raised the argument first." (citing *Robinson*, 485 U.S. 25)). In other words, when the defendant "opens the door" by asserting affirmative claims derived from or inconsistent with the prior invocation of his rights, the Government may introduce evidence of the defendant's invocation of his Fourth and Fifth Amendment rights to rebut the advantage sought by defendant.

As explained by the Kentucky Supreme Court: "[I]n circumstances when such evidence is probative for some purpose other than to simply penalize the defendant for exercising a constitutional right, then notions of fair play and the need to preserve the truth-testing functions of the adversarial process may outweigh the defendant's interest in suppressing the evidence." *Coulthard v. Com.*, 230 S.W.3d 572, 584 (Ky. 2007) (admitting evidence of defendant's "refusal to voluntarily consent to fingerprint sampling . . . for the proper purposes of rebutting and impeaching [defendant]'s claim of self defense" because defendant raised self defense only after denying any involvement). Cases demonstrate that a defendant's refusal to permit a search is admissible to rebut an affirmative claim made by a defendant. *See Leavitt v. Arave*, 383 F.3d 809, 828 (9th Cir. 2004) (evidence showing that defendant was the only suspect who refused to voluntarily give a blood sample was properly admitted to rebut defendant's claim that he cooperated with the investigation); *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir. 1999) (no Fourth Amendment violation where evidence regarding defendant's refusal to permit search

were admitted for proper purposes of establishing that defendant had dominion and control over the premises); *United States v. McNatt*, 931 F.2d 251, 256 (4th Cir. 1991) (no Fourth Amendment violation where comments regarding defendant's refusal to permit search were in response to defendant's argument that drugs were planted by police in his vehicle); *People v. Wood*, 127 Cal.Rptr.2d 132, 136-37 (Cal. Ct. App. 2002) (finding that admission of evidence in government's case-in-chief of defendant's refusal to permit search was harmless error because it would have been admissible on cross-examination of defendant as "it contradicted defendant's testimony that he did not have control of the property where the horse was located").

Here, Defendant seeks to gain an advantage from the invocation of his alleged Fourth Amendment rights at trial by commenting on the lack of DNA evidence. The Court finds that Defendant is attempting to use his constitutional rights "as a sword, rather than a shield." Accordingly, "the prosecution may respond appropriately" by introducing evidence of Defendant's refusal if he "opens the door" by referencing the lack of DNA evidence at trial.[3] *Isaac*, 134 F.3d at 206; *Thames*, 846 F.2d at 206-207.

### III. Defendant's Motion in Limine to Preclude Testimony of the Government's Fingerprint Expert

The Government has indicated that it seeks to admit testimony of a fingerprint expert on the issue of possible reasons explaining why no fingerprints were found on the firearm and grenade found at 816 Williams Delight. Defendant argues that this expert testimony will not assist the jury because it will lead the jury to speculate on one of several possibilities for the lack of fingerprints. Defendant also argues that the expert's opinion "assumes an ultimate issue to be

---

[3] Of course, if Defendant does not assert a lack of DNA evidence, the Government may not introduce evidence of Defendant's refusal to provide DNA evidence.

8

determined by the jury, whether the Defendant possessed the evidence in the first place." (Def.'s Mot. at 1, Doc. 42.)  The Government argues that the evidence will assist the jury in determining why fingerprints were not found on the firearm and grenade.

In *United States v. Burdeau*, 168 F.3d 352 (9th Cir. 1999), the Ninth Circuit addressed a nearly identical issue and held that:

> We do not find merit in Burdeau's contention that the expert testimony was irrelevant. The testimony aided the jury in understanding why Burdeau's fingerprints might not be found on items that the jury knew he had touched, which explanation would not otherwise have been readily apparent.

*Id*. at 357.  *See also United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir.1987) (upholding admission of testimony by FBI agent regarding why fingerprints are found in only ten percent of bank robbery cases); *United States v. Feldman*, 788 F.2d 544, 554-55 (9th Cir.1986) (admission of FBI agent's direct testimony regarding how often fingerprint evidence is discovered was proper).

Here, the Government has indicated that it will offer evidence that Defendant admitted possessing a firearm and grenade but that the Defendant's fingerprints were not found on either. As in *Burdeau*, the fingerprint expert's testimony is relevant in explaining why Defendant's fingerprints were not found on them.  Accordingly, Defendant's motion in limine to exclude the Government's fingerprint expert is denied.

## IV. Conclusion

For the foregoing reasons it is hereby,

**ORDERED** that Defendant's Motion in Limine to exclude evidence concerning events that transpired on January 31, 2010 and search and arrest warrants executed on February 13, 2010 is **DENIED IN PART**. The Government may introduce the search and arrest warrants executed on February 13, 2010 during its case-in-chief, provided that any charges or any recitation of the events occurring on January 31, 2010 appearing on the warrants is redacted. Pursuant to the Government's representation that "unless the defendant opens the door it has no intention of offering evidence of the January 31, 2010 incident," the Court will reserve ruling on its admissibility of evidence regarding the January 31, 2010 events until the Government moves to introduce this testimony out of the presence of the jury;

**ORDERED** that the Government's Motion in Limine to prohibit Defendant from offering evidence of the lack of DNA evidence is **GRANTED IN PART AND DENIED IN PART**. Should Defendant argue or otherwise introduce evidence that the Government lacks DNA evidence, the Government shall be permitted to introduce evidence that Defendant refused to provide a DNA sample;

**ORDERED** that Defendant's Motion in Limine to preclude the testimony of the Government's fingerprint expert is **DENIED**.

**ENTERED this 15th day of June, 2010**.

_____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE