DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2010-0011 |
| ) | |
| JIMMY DAVIS, ) | |
| ) | |
| Defendant. ) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
**Kia D. Sears, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Defendant Jimmy Davis' "Motion to Dismiss Revocation Proceedings or, Alternatively to Release – Hearing Requested" (Dkt. No 192); the Government's Response (Dkt. No. 195); and Defendant's Reply (Dkt. No. 199). For the reasons that follow, Defendant's Motion will be denied.

### I.   BACKGROUND

Defendant was originally charged in 2010 with firearms offenses in this Court. (Dkt. No. 1). He pleaded guilty and was sentenced to 33 months of imprisonment and three years of supervised release. (Dkt. No. 101). Defendant served his sentence and commenced supervised release on November 8, 2013. (Dkt. No. 195 at 1).

On February 23, 2015, Defendant was arrested by the Virgin Islands Police Department on various local charges. (Dkt. No. 192 at 2).[1] Defendant was held in custody on these charges until February 8, 2016. (*Id.*).

On September 28, 2015, while Defendant was in local custody, an arrest warrant was signed by United States Magistrate Judge George W. Cannon, Jr., based on the charge that Defendant had violated the conditions of his federal supervised release by committing another federal, state or local crime. (Dkt. No. 120). Upon Defendant's release from local custody, he was brought before the Magistrate Judge for an initial advice of rights hearing on February 10, 2016. (Dkt. No. 122). On February 17, 2016, after a preliminary hearing, Defendant was released from federal custody on bond, and ordered to submit to GPS monitoring. (Dkt. No. 132).

On September 8, 2016, Defendant was arrested for allegedly violating the conditions of release on bond set by the Magistrate Judge on February 17, 2016, and a preliminary hearing was held on September 13, 2016. (Dkt. Nos. 186 & 189). At that hearing, Probation Officer Edward Modeste testified that Defendant had violated his conditions of release on bond—specifically, by abusing his permission to travel; traveling to permitted locations by circuitous and illogical routes; failing to charge his GPS monitor reliably; and failing to maintain a telephone number where Probation could contact him. The Magistrate Judge found probable cause to believe that Defendant had committed the violations charged and ordered that the Defendant be held without bond. (Dkt. No. 190).[2]

---

[1] The arrest warrant alleged unlawful sexual contact/domestic violence (14 V.I.C. § 1708(a)(4) and 16 V.I.C. § 91(b)(5)) and disturbance of the peace by threats/domestic violence (14 V.I.C. § 622(1) and 16 V.I.C. § 91(b)(11)). (Dkt. No. 192 at 2).

[2] As Defendant correctly notes in his "Response to Government's Opposition to Motion to Dismiss Revocation Proceedings" (Dkt. No 199), the Magistrate Judge's September 13, 2016 Order finding probable cause states that "Defendnat has violated the conditions of his supervised release." (Dkt.

Defendant's trial in Superior Court, which was previously scheduled to commence on October 11, 2016 (*See* Dkt. No. 192 at 7) was continued *nunc pro tunc* on October 25, 2016. (*Id.* at 3-4). It is currently set for March 20, 2017.

In his Motion, Defendant argues that, because this Court issued an arrest warrant for Defendant's supervised release violations over one year ago, there has been an unreasonable delay in holding a revocation hearing and Defendant should be released and these proceedings dismissed. (*Id.* at 6-7). He asserts that waiting for the disposition of local charges is not a sufficient reason for delay. (*Id.* at 7). He acknowledges that this is the first time that he has asserted a right to a prompt hearing, but argues that the remaining factors outlined in *Barker v. Wingo*, 407 U.S. 514 (1972), weigh in favor of dismissal. (*Id.*). Defendant further asserts that his Superior Court case has been delayed by unconstitutional government action, in the form of obstructing Defendant's access to a critical witness. (*Id.* at 8-9). Defendant argues that the remedy for this unconstitutional action is dismissal of the revocation petition. (*Id.* at 9).

In its response, the Government counters that the delay in commencing revocation proceedings was minimal. (Dkt. No. 195 at 3-4). Further, the Government maintains that Defendant did not suffer cognizable prejudice from the delay in proceedings. (*Id.* at 4-5). Finally, the Government asserts that Defendant's arguments about unconstitutional government action with regard to his case in Superior Court are inappropriate for consideration by this Court, or

---

No. 190). However, based on the Court's review of the record, the Court concludes that the issue before the Magistrate Judge at the September 2016 hearing was the alleged violations by Defendant of the conditions of his release on bond that were set in February 2016. Based on the Magistrate Judge's conclusion that "no conditions exist that would reasonably assure the safety of any other person and the community or Defendant's appearance as required" (*id*), Defendant was detained (rather than released, as in February) pending a hearing on the supervised release violation for which the arrest warrant was issued on September 2015.

3

alternatively, that Defendant has failed to show how the alleged government action justifies the relief requested. (*Id.* at 5-6).

## II. DISCUSSION

"Hearings to revoke supervised release, like hearings to revoke parole, are not criminal prosecutions." *United States v. Oidac*, 486 F. App'x 318, 320 (3d Cir. 2012). As such, these proceedings do not trigger the "'full panoply of rights' which attach during a criminal trial, including the Sixth Amendment's guarantee of a 'speedy trial.'" *Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)). These proceedings do, however, affect the liberty interests of individuals, and trigger limited protections under the Due Process Clause. *Id.* (citing *Morrissey,* 408 U.S. at 484).

"The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Morrissey*, 408 U.S. at 488. This dictate has been codified in Fed. R. Crim. P. 32.1, which requires that courts "must hold the revocation hearing within a reasonable time." When evaluating claims under Fed. R. Crim. P. 32.1, courts often look to the factors the Supreme Court laid out in *Barker v. Wingo*, 407 U.S. 514 (1972) because of the "somewhat analogous context of the Sixth Amendment right to speedy trial." *United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989) (quoting *United States v. Companion,* 545 F.2d 308, 311 (2d Cir.1976)); *see also Oidac*, 486 F. App'x at 323; *United States v. Poellnitz*, 372 F.3d 562, 570 (3d Cir. 2004). Those factors are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The "custody" to which *Morrissey* refers, and from which the "reasonable time" is measured, begins at the time the parolee is taken into custody with regard to the parole violation. *Moody v. Daggett*, 429 U.S. 78, 86 (1976) (citing *Morrissey*, 408

4

U.S. at 488) ("execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation").

Here, there were three points at which the supervised release violation was the factor which prompted action as it relates to Defendant. The first was the issuance of an arrest warrant on September 28, 2015. (Dkt. No. 120). However, at that time Defendant was in custody on the local charges and no action was taken on the federal warrant.

The second point of intersection between the alleged violation of supervised release and Defendant was when he was brought before the federal Magistrate Judge on the supervised release violation in February 2016, after he was released from local custody. (Dkt. No. 133). However, following a preliminary hearing, Defendant was not detained, but instead was released from custody on bond, with conditions. (Dkt. Nos. 134-136). Accordingly, no loss of liberty occurred at this time as a result of the alleged violation of supervised release. The issuance of a warrant, without subjecting an individual to custody thereunder, does not trigger a loss of liberty, and therefore "there is no requirement for an immediate hearing." *Moody*, 429 U.S. at 86-87 (citing *Morrissey*, 408 U.S. at 488).

The third and final intersection between the alleged supervised release violation and Defendant occurred when Defendant was arrested on September 8, 2016, after he allegedly violated the conditions for his release on bond which were set in February 2016. (Dkt. No. 134). Defendant was ordered detained after a preliminary hearing on September 13, 2016. (Dkt. No. 190). This is, therefore, the only point at which Defendant can be deemed to have been taken into federal custody and deprived of his liberty as a result of the alleged violation of supervised release. Accordingly, the reasonable time within which a revocation hearing must be held, and any delay in such proceedings, must be measured from this date of federal custody.

Defendant filed his Motion to Dismiss on October 17, 2016, a little more than a month (38 days) after he was arrested and detained. Such a delay is not unreasonable. *Morrissey*, 408 U.S. at 488. ("A lapse of two months . . . would not appear to be unreasonable."). This is especially so where, as here, Defendant's trial on the local charges was previously scheduled for October 11, 2016. *See Poellnitz*, 372 F.3d at 571 ("[I]t [is] reasonable for the District Court to wait for the adjudication of the state court charges before proceeding with the revocation hearing.").[3]

Defendant's arguments to the contrary are without merit. The "over 12-month[]" period of delay about which Defendant complains is measured from the date on which the arrest warrant for the alleged violation of Defendant's conditions of supervised release was issued (September 28, 2015). (Dkt. No. 192). Defendant's reliance on that date is misplaced because it does not correspond with the period that Defendant was in federal custody for the alleged violation. Instead it includes just over four months (4 months, 11 days) when Defendant was in local custody on local charges, and nearly seven months (6 months, 22 days) when Defendant was *on release with conditions* for the alleged supervised release violation.

Further, the First Circuit case upon which Defendant relies does not aid his cause. In *United States v. Pagan-Rodriguez*, 600 F.3d 39 (1st Cir. 2010), the defendant spent over a year detained in federal custody for the alleged supervised release violation. *Id.* This stands in sharp contrast to this case, where Defendant had been in federal custody for a little over a month prior to the filing of the instant Motion to Dismiss. A delay of 38 days does not, in language used by the First Circuit, effectively "leave an offender in limbo indefinitely while waiting for a state court to adjudicate a

---

[3] Extended to today, the alleged delay would constitute three months. The additional delay is attributable in large part to the time needed for briefing and resolution of the issues raised by the instant Motion to Dismiss filed by Defendant.

counterpart criminal charge." *Id.* (citing *United States v. Reeks,* 441 F. Supp. 2d 123, 125 (D. Me. 2006)). Thus, even under the standard applied by the First Circuit and advocated by Defendant, the time Defendant has waited for a hearing has not been unreasonable.

Turning to the factors considered in *Barker v. Wingo*, the Supreme Court considered a delay that is "presumptively prejudicial" to be "to some extent a triggering mechanism," and found that there was "no necessity for inquiry into the other factors that go into the balance" where there was not such a delay. 407 U.S. at 530. Due to the imprecise nature of the speedy trial right itself, the length of delay which is to be considered presumptively prejudicial and therefore triggers further inquiry eludes precise definition, and courts are left to conduct a context specific inquiry in each case. *Id.* at 530-31 ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). As discussed above, no delay of significance occurred here, let alone one that under any reasonable interpretation can be deemed to be "presumptively prejudicial." Thus, no further analysis is necessary to conclude that Defendant's request for relief is not well founded.

Even if the remaining *Barker* factors were to be considered, this would not alter the result. Preliminarily, to conclude that there was an "over 12-month[]" delay (Dkt. No. 192 at 6), one would have to agree with Defendant's proposition that delay in these proceedings should be calculated from the time that the arrest warrant was issued—although not executed—in September 2015. To conclude that there was an over eight-month delay because "Mr. Davis appeared before this court over 8 months ago and no revocation hearing has been scheduled" (*id.* at 7), one would have to agree with Defendant's proposition that delay in these proceedings should be calculated from the time that he was brought before the Magistrate Judge on the federal supervised release violation in February 2016, although he was released from federal custody on bond after a

7

preliminary hearing. Acceptance of either of Defendant's propositions would fly in the face of the Supreme Court's pronouncement that the operative events are execution of the warrant *and* custody. *Moody*, 429 U.S. at 87. As noted above, the federal warrant here was not executed until after Defendant was released from local custody in February 2016 in connection with his pending charges in Superior Court, and Defendant was not placed into federal custody for the alleged supervised release violation until September 2016, when he allegedly violated his February 2016 bond conditions. Because execution *and* custody did not occur until September 2016, the premises of Defendant's arguments are fatally flawed.

In any event, even accepting Defendant's flawed premises, "a long delay is not sufficient by itself to establish a Due Process violation if the other *Barker* factors do not weigh in the petitioner's favor." *Oidac*, 486 F. App'x at 321. Here, the second factor—reason for the delay—does not weigh in Defendant's favor. The revocation proceedings, which are grounded in the local charges pending in Superior Court, have not been pursued during the pendency of the local charges. As the Third Circuit has noted, "it [is] reasonable for the District Court to wait for the adjudication of the state court charges before proceeding with the revocation hearing." *Poellnitz*, 372 F.3d at 571.[4] This argument is particularly compelling where—as here—Defendant was not detained in federal custody for the alleged supervised release violation for twelve of the thirteen months of which he complains.

---

[4] Indeed, it appears that Defendant enjoyed the benefits of such an approach. (*See, e.g.,* Dkt. No. 192 at 3-4) ("Because the allegations in the local case were the same as the ones to be litigated in this matter, undersigned counsel and counsel in the local case worked together and shared resources in investigating this matter."). And, as discussed below, Defendant apparently acquiesced in this approach, in view of his failure to assert any right to a prompt hearing until over one year after the date from which he now claims any delay should be measured.

The third factor—Defendant's assertion of his right—also does not weigh in his favor. Defendant has conceded that he did not assert the claimed right to a prompt hearing until the filing of the instant motion on October 17, 2016. (Dkt. No. 192 at 7). In view of Defendant's contention that the delay should be measured from September 2015 when the federal arrest warrant was issued, Defendant's almost thirteen-month delay in claiming an entitlement to a prompt hearing does not weigh in favor of finding that Defendant's rights have been violated, but instead suggests that he acquiesced in any delay up until the filing of the instant Motion. *See Barker*, 407 U.S. at 531-32 ("The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."). Defendant posits in his Reply that he was under no obligation to assert his right to a prompt hearing. (Dkt. No. 199 at 6). However, the Supreme Court has "emphasize[d] that failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied [that right]." *Barker*, 407 U.S. at 532. The same reasoning would apply in the "somewhat analogous" context of revocation proceedings. *Rasmussen*, 881 F.2d at 398. Thus, while Defendant's delay in asserting his rights does not constitute a waiver of such rights, such delay does not weigh in his favor when considering the "assertion of his right" factor articulated in *Barker.* 407 U.S. at 531.

With regard to the fourth factor—prejudice to the defendant—the Supreme Court has pointed to three ways that defendants can suffer actual prejudice from delay: "(1) impairment of their ability to contest the charges; (2) infringement of their liberty interest against unnecessary incarceration; and (3) infliction of mental anxiety by being kept in legal limbo." *Oidac*, 486 F. App'x at 323 (citing *Barker,* 407 U.S. at 532). There must be a finding of actual prejudice: "no federal court has ever presumed prejudice from delays in revocation hearings." *Id*. (citing *United*

*States v. Santana,* 526 F.3d 1257, 1261 (9th Cir. 2008)). Defendant has failed to demonstrate any actual prejudice.

The most serious manifestation of prejudicial delay is the impairment of a defendant's ability to contest the charges. *Barker,* 407 U.S. at 532. There has been no assertion that Defendant's ability to contest the supervised release violation charges was compromised or adversely affected in any way. Indeed, the underlying local charges which form the basis for the alleged violation of Defendant's conditions of supervised release are pending in Superior Court: as Defendant has acknowledged, his counsel and counsel in the local matter have been "work[ing] together and shar[ing] resources in investigating the matter." (Dkt. No. 192 at 4).

Nor has there been any unnecessary incarceration associated with the alleged violation of conditions of supervised release upon which an infringement of Defendant's liberty interests against such incarceration can be grounded. As discussed above, Defendant had been in federal custody as a result of the alleged violation of his conditions of supervised release for just over one month at the time he filed his Motion to Dismiss. Defendant has presented no basis, under the circumstances here, upon which to conclude that this amounts to "unnecessary incarceration."

In terms of "legal limbo," Defendant has advanced no arguments in his Motion from which one can reasonably conclude that the pendency of the revocation proceedings is the precipitating cause of mental anxiety from being kept in "legal limbo." Although some level of anxiety can be expected to result from pending charges, "'only unusual or specific problems of personal prejudice will satisfy the *Barker* test.'" *Oidac*, 486 F. App'x at 323 (quoting *Heiser v. Ryan,* 15 F.3d 299, 305 (3d Cir. 1994)). In the absence of any showing by Defendant in this regard, the Court finds no basis for concluding that the "infliction of mental anxiety" factor—as it relates to the revocation proceedings—provides a legitimate justification for the relief that Defendant seeks.

Defendant points to "the onerous conditions of release that were placed on him" in support of his assertions of prejudice. (Dkt. No. 192). However, Defendant fails to identify any particular condition as being so onerous as to be prejudicial, and the Court's review of the conditions of Defendant's supervised release reveal no such conditions. (Dkt. No. 134). Accordingly, Defendant's argument in this regard will be rejected.

In view of the Court's finding that there has been no delay that could result in a violation of Defendant's rights, and that the *Barker* factors weigh against dismissal, the Court concludes that Defendant has failed to advance any convincing reason to dismiss the revocation proceedings before the Court or to release Defendant pending the revocation hearing.

Finally, Defendant cites alleged unconstitutional government action as the cause of delay in the Superior Court proceedings and grounds for the relief sought here. The Court notes that Defendant's claim of unconstitutional government action was addressed by the Superior Court. In its Order, the Superior Court stated that it had before it "Jimmy Davis' Motion for Sanctions of Dismissal, filed on October 7, 2016," in which Defendant alleged that his investigator was unable to speak with the Complainant and her mother because the Government's Case Investigator advised them not to cooperate or speak with Defendant's investigator, in violation of *Brady* and the Fourteenth Amendment Due Process Clause. *Virgin Islands v. Davis*, Crim. No. SX-2015-CR-0000065, Order entered October 25, 2016. After conducting an evidentiary hearing, the Superior Court denied Defendant's Motion, but continued the trial to allow Defendant access to the complaining witness. (*See* Dkt. No. 192).

Under the circumstances here, the Court fails to understand why the alleged unconstitutional government action should be relitigated in this Court in connection with the revocation proceedings, and why, in any event, dismissal of the revocation proceedings or release

11

of Defendant would be warranted, especially in view of the Court's analysis of the issues above. Defendant's wholly conclusory argument that "[t]he proper remedy for the unconstitutional action would be for Mr. Davis' revocation petition to be dismissed, or at least for Mr. Davis to be released from custody while he awaits a hearing on this matter," (*Id.* at 9) because "[t]his matter would have been resolved if Mr. Davis' investigator was not frustrated in her efforts to interview the only alleged eyewitness—the complainant" (*id.* at 8-9) falls woefully short of providing a cogent justification for the relief that Defendant seeks. Accordingly, the Court rejects Defendant's contention that the alleged constitutional violations occurring in Superior Court should be cured by dismissal of these proceedings or release of Defendant.

In view of the Court's review and resolution of the issues involved based on the parties' written submissions, the Court finds that a hearing on Defendant's Motion to Dismiss is unnecessary and denies Defendant's request for a hearing.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion will be denied. A revocation hearing will be scheduled for Tuesday, December 20, 2016 at 9:00 a.m. in STX Courtroom 1 before the undersigned Chief Judge.

An appropriate Order accompanies this Memorandum Opinion.

Date: December 8, 2016 _____/s/_____
                                                              WILMA A. LEWIS
                                                              Chief Judge